IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
APR 26 2005
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:05CR00001 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WILLIAM RUSSELL CARROLL, | ) | |
| | ) | |
| Defendant, | ) | By: B. WAUGH CRIGLER |
| | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Superseding Indictment charging defendant, in Count One, with knowingly conspiring to distribute, and to possess with intent to distribute, more than 5 kilograms a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; in Count Two, with conspiring to cause another to travel in interstate commerce with the intent that the murder of another be committed in violation of the laws of any state, and providing as consideration, a promise and agreement to pay things of pecuniary value, to wit: cocaine, a firearm, ammunition and United States currency, in violation of 18 U.S.C. § 1958; in Counts Three, Five, Eight, Ten, Eleven, Twelve and Thirteen, with knowingly and intentionally distributing, or possessing with the intent to distribute, a measurable quantity of a mixture or substance containing cocaine, a Schedule II narcotic substance, in violation of 21 U.S.C. § 924(c); in Count Four, with knowingly and intentionally using or carrying a firearm, and possessing a firearm, to wit: a Norinco MAK-90 assault rifle, serial number 9347319, during and in furtherance of a drug trafficking crime and

-1-

in relation to a crime of violence, for which he could be prosecuted in a court of the United States, in violation of 18 U.S.C. § 924(c); in Count Six, with knowingly and intentionally making a firearm, to wit: a weapon made from an Ithaca Model 37 Featherlight .12 gauge shotgun, serial number 371595516, which has a barrel length of less than 18 inches, in violation of 26 U.S.C. § 5861(f); in Count Seven, with knowingly and intentionally receiving or possessing a firearm which is not registered to him in the National Firearm Registration and Transfer Record, to wit: an Ithaca Model 37 Featherlight .12 gauge shotgun, serial number 371595516, in violation of 26 U.S.C. § 5861(d); in Count Nine, with knowingly and intentionally using or carrying a firearm, and possessing a firearm, to wit: an Ithaca Model 37 Featherlight .12 gauge shotgun, serial number 371595516, during and in furtherance of a drug trafficking crime, and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, in violation of 18 U.S.C. § 924(c)(1)(A), 924 (c)(1)(B)(i), and 924 (c)(1)(C)(i); and, in Count Fourteen, with knowingly and intentionally using or carrying a firearm, and possessing a firearm, to wit: a Harrington & Richardson Topper Model .12 gauge single shot shotgun, serial number BA530544, during and in furtherance of a drug trafficking crime, and in relation to a crime of violence, for which he could be prosecuted in a court of the United States.

The Grand Jury also made special findings of relevant conduct, specific offense characteristic(s), and/or bases for upward departure under the United States Sentencing Guidelines. Specifically, with respect to Counts One, Three, Five, Eight, Ten, Eleven, Twelve, and Thirteen, the Grand Jury found that the defendant should be held responsible for more than 5 kilograms of cocaine, a Schedule II controlled substance, as set forth in United States Sentencing Guidelines § 2D1.1(c)(3) and for possessing a firearm, as set forth in U.S.S.G. § 2D1.1(b)(1). Moreover, with respect to Count Two, the Grand Jury found that the defendant shall be held responsible as an organizer or leader of criminal activity that involved five

Case 5:05-cr-00001-GEC-BWC   Document 189   Filed 04/26/05   Page 2 of 12   Pageid#: 455

or more participants or was otherwise extensive, as set forth in U.S.S.G. § 3B1.1(c) and for possessing a firearm, as set forth in U.S.S.G. § 2D1.1(b)(1). On April 18, 2005, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Counts Two, Three, Four, Five, Six, Seven, and Eight of the Indictment, and to a lesser included offense of Count One, the conspiracy count, pursuant to a plea agreement between defendant and the government. The government has agreed to dismiss the remaining counts against the defendant upon acceptance of his plea.

At this hearing the defendant was placed under oath and testified that his full legal name is William Russell Carroll, that he was born on February 11, 1964, and that he completed high school. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he was subject to no other physical or mental condition that would impair his ability to understand the nature of the proceedings being held, the nature of the charges against him or the consequences of pleading guilty to those charges. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to these offenses.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. He stated that he understood the terms of the agreement and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right

to have a jury determine beyond a reasonable doubt the facts alleged in Counts Two, Three, Four, Five, Six, Seven, Eight, and the lesser included offense of Count One, including any facts related to sentencing.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offenses with which he is charged are felonies and that, if his plea is accepted, he will be adjudged guilty of such offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 per count of conviction, for a total of $800, and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862, for a period of years or indefinitely, as set forth in the plea agreement. The defendant stated that he agreed to forfeit all weapons seized or restrained by law enforcement agents, including a Harrington & Richardson .12 gauge shotgun, serial number 19092, a Mauser .270 bolt action rifle, serial number 3494, a Harrington & Richardson .410 gauge shotgun, serial number AM293730, and a Winchester .22 caliber semi-automatic rifle, serial number B798133, along with any assets that represent proceeds of the Title 21 violations to which he is pleading guilty and any assets which were used to facilitate a violation thereof. The defendant further stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant testified that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any

department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possibly penalty provided by law for the offenses with which he is charged is, in the case of Count One, life imprisonment and a $4 million fine; in the case of Count Two, ten years imprisonment and a $250,000 fine, together with supervised release; in the case of Counts Three, Five, Eight, Ten, Eleven, Twelve and Thirteen, twenty years imprisonment and a $1 million fine, as to each count, together with supervised release; in the case of Count Four, life imprisonment and a $250,000 fine;[1] in the case of Count Six, ten years imprisonment and a $250,000 fine; in the case of Count Seven, ten years imprisonment and a $250,000 fine; and in the case of Counts Nine and Fourteen, life imprisonment and a $250,000 fine, as to each count. The defendant was also informed that the minimum mandatory sentence for Count One is ten years imprisonment, together with supervised release; for Count Four, five years imprisonment, together with supervised release; and for Counts Nine and Fourteen, twenty-five years imprisonment, as to each count, together with supervised release.

The defendant was informed under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the sentencing guidelines are

---

[1] The Plea Agreement incorrectly states that the maximum penalty for Count Four is "five years mandatory imprisonment." Title 18 U.S.C. § 924(c)(1)(A)(i) provides for a *minimum* mandatory sentence of five years imprisonment for the offense charged in Count Four with no specified maximum. Such a statutory prescription "makes sense only as a sentencing factor that cabins a judge's discretion when imposing a sentence for the base offense in § 924(c)(1), *for which the maximum penalty is life imprisonment.*" *United States v. Harrison*, 272 F.3d 220 (4th Cir. 2001) (emphasis added).

Case 5:05-cr-00001-GEC-BWC   Document 189   Filed 04/26/05   Page 5 of 12   Pageid#: 458

no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have an opportunity to challenge the reported facts and the application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney has given him and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a) for acceptance of responsibility and a one-level (1) reduction pursuant to USSG § 3E1.1(b) because he meets the listed criteria. The defendant also stated that he understood that the government is under no obligation to file a motion for substantial assistance and currently does not intend to file such a motion on his behalf at the time of sentencing. The defendant testified that he agreed that, for purposes of USSG §§ 2D1.1 and 1B1.3, he should be held responsible for more than 500 grams but less than 2 kilograms of cocaine. Nevertheless, the defendant acknowledged that the matter of drug weight is a factual matter to be determined independently by the court. In addition, the defendant testified that he understood that a maximum of four sentencing points may be added to his sentencing level depending on the degree to which he organized, led, managed, or supervised criminal activity involving multiple participants, but that his base offense will neither be enhanced nor diminished by his role in the offense. The defendant

stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless he voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict;
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also testified that he understood the possible consequences of her plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Counts Two, Three, Four, Five, Six, Seven, and Eight of the Indictment, along with a lesser included offense of Count One.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived his right to have the government's Factual Summary read in open court and accepted said Summary in its entirety. The Factual Summary having been filed in open court, the

evidence presented therein regarding the offenses charged may be summarized as follows:

***Count One***

The defendant was a member of a cocaine distribution conspiracy. The defendant's direct regular suppliers were John S. Floyd and Charles J. Currington. Floyd and Currington were, in turn, supplied by other members of the conspiracy. The defendant sold the cocaine he bought from Floyd and Carrington. Based on the defendant's statement to investigators, he distributed over 500 grams of cocaine over the course of the conspiracy. Also, as part of the conspiracy, the defendant distributed cocaine to an undercover agent on seven occasions, for a total drug weight of 532 grams.

***Count Two***

Beginning on May 19, 2004 and continuing until January 5, 2005, undercover ATF agents met with the defendant in Winchester, Virginia approximately nine times and had numerous recorded telephone conversations with him. During these recorded meetings and conversations, the defendant negotiated payment for the murder of his girlfriend's husband in Cumberland, Maryland. The defendant stated he would pay with money and cocaine and provide the murder weapon. The defendant provided a down-payment for the murder, which consisted of a MAK 90 assault rifle, 299 rounds of ammunition and four magazines. This weapon was accepted as a down-payment after the defendant told the undercover agent that he intended to trade the weapon to a "Mexican" cocaine dealer for 2.5 ounces of cocaine to raise money to pay for the murder. The defendant provided the undercover agent with the intended victim's address, work schedule, vehicle description, and two photographs of the intended victim. The defendant provided the undercover agent with two additional murder weapons: a .12 gauge sawed-off shotgun and later, a .12 gauge shotgun. The defendant coordinated the timing of the murder to ensure a solid alibi. The defendant told the undercover agent

he would be at the "FLYING J" truck stop when the murder occurred. The defendant discussed and approved the method and means for the abduction and murder of the victim.

### Counts Three and Four

On November 10, 2004, the undercover agent met with the defendant. The purpose of the meeting was to make down-payment for the murder-for-hire and plan for the timing of the murder. During the meeting, the defendant stated that he wanted the murder to occur sometime around the holidays and that he did not care how the victim was killed. The defendant further told the undercover agent that he had a MAK 90 assault rifle that he was going to trade for 2.5 ounces of cocaine so he could pay for the murder. The undercover agent and the defendant agreed that the defendant would give the undercover agent the MAK 90 assault rifle as down-payment for the murder and would later give the undercover agent 1 ounce of cocaine as payment for the murder. The defendant also stated that he would provide the undercover agent with the murder weapon. At the conclusion of this meeting, the defendant gave the undercover agent the MAK 90 assault rifle as partial down payment for the murder. The undercover agent then purchased 1.6 grams of cocaine, the weight of which was later confirmed by the DEA lab. The firearm was test-fired and found to function as designed.

### Count Five

On December 3, 2004, an undercover agent met the defendant for the purpose of purchasing 2 ounces of cocaine. The undercover agent went to the defendant's residence and gave the defendant $1,800 for the purchase of the cocaine. The undercover then observed the defendant hand the money to co-conspirator, John S. Floyd. Floyd took the DEA funds and departed the residence to purchase the cocaine. Once Floyd had left, the defendant handed the undercover agent two photographs of the intended murder victim. While waiting for Floyd to return with the cocaine, the undercover agent and

-9-

Case 5:05-cr-00001-GEC-BWC   Document 189   Filed 04/26/05   Page 9 of 12   Pageid#: 462

the defendant talked about the murder weapon and the undercover agent told the defendant it did not have to be a handgun. The defendant immediately placed a telephone call, in front of the undercover agent, and advised the individual he was calling that the firearm could be a pistol or a "sawed-off." Upon hanging up the phone, the defendant told the undercover agent that he had just spoken to his eighteen-year-old son, William Russell Carroll, II (a.k.a "Rusty") and that Rusty Carroll had obtained firearms for him in the past. Later that evening, the undercover and the defendant then drove to the vicinity of the residence of Floyd and additional co-conspirator Charles Currington. The defendant and the undercover agent met with Floyd and Floyd gave the cocaine to the defendant who, in turn, gave it to the undercover agent. The cocaine was then submitted to the DEA lab where it was determined to weigh 54.5 grams.

### *Counts Six, Seven and Eight*

On December 13, 2004, an undercover agent met with the defendant for the purpose of receiving the weapon to be used for the murder-for-hire and to purchase 6 ounces of cocaine. The defendant provided the cocaine to the undercover agent. The defendant also provided the undercover agent with a sawed-off shotgun. The shotgun had been made by the defendant's son, William Russell Carroll, II, a co-defendant in this case. The making of the sawed-off shotgun was done at the direction of, and on behalf of, the defendant. This sawed-off shotgun had an overall length of 32.5 inches and a barrel length of 13.75 inches. This shotgun was examined by the ATF Firearms Technology Branch which determined that the shotgun "is a firearm as defined in 18 U.S.C. § 921(a)(3). Having a barrel length of less than 18 inches in length (sic), it is also a firearm as defined in 26 U.S.C. § 5845(a)(1)." A search of the National Firearm Registration and Transfer Record reveals that this firearm is not registered to the defendant or to any other person, nor is any firearm registered to the defendant.

Finally, the cocaine purchased by the undercover agent was submitted to the DEA lab and was found to weigh 168.8 grams.

**PROPOSED FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Counts Two, Three, Four, Five, Six, Seven, and Eight of the Indictment, as well as a lesser included offense of Count One; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that this court accept the defendant's plea of guilty to Counts Two, Three, Four, Five, Six, Seven, and Eight of the Indictment, as well as a lesser included offense of Count One, and adjudge him guilty of those offenses. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after that report has been submitted to the Court. A sentencing hearing hereby is scheduled before the presiding District Judge for July 8 at 9:30 a.m. at the United States District Court in Harrisonburg, Virginia.

Case 5:05-cr-00001-GEC-BWC   Document 189   Filed 04/26/05   Page 11 of 12   Pageid#: 464

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

4-26-05
Date

-12-

Case 5:05-cr-00001-GEC-BWC   Document 189   Filed 04/26/05   Page 12 of 12   Pageid#: 465